UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN F. D'AMICO,

     Plaintiff,

v.                                                    Case No.: **3:19-cv-1422-HLA-JBT**

STEVEN H. WHEELER, et al.,

     Defendants.

_____/

### ORDER

    **THIS CAUSE** is before the Court on Defendant Steven H. Wheeler's

Motion to Dismiss (Dkt. 33) and Plaintiff Steven F. D'Amico's response in

opposition (Dkt. 48); and Defendants' Edwards and Inch's Motion to Dismiss

(Dkt. 37) and Plaintiff D'Amico's response in opposition (Dkt. 40).

**I.  Background**

    Plaintiff Steven F. D'Amico, an inmate of the Florida penal system

proceeding pro se, brings this action against Defendants pursuant to 42

U.S.C. § 1983 based on violations of his First and Eighth Amendment rights

for the delay and denial of proper medical care in relation to treatment for a

broken jaw and for being "needlessly" subjected to pain as a result of the

treatment he did receive (Dkt. 1, p. 12).  Mr. D'Amico seeks injunctive relief

in that he requests to be examined and treated by an oral surgeon other than the doctor who performed his operation, Dr. D. Smith. Mr. D'Amico also seeks compensatory and punitive damages (Dkt. 1, p. 12).

The Court granted the dismissal of Defendants Dr. Ramon Bassa and Dr. D. Smith from this action, as well as Mr. D'Amico's claims against them, in a prior order (Dkt. 38). Mr. D'Amico's allegations regarding this action have been detailed in the Court's previous order as follows:

> Plaintiff alleges on June 3, 2019, while confined at RMC, he was punched from behind by an inmate (an unknown gang member), resulting in a broken jaw. Complaint (Doc. 1 at 6).
>
> Plaintiff went to urgent care at RMC and x-rays were taken, confirming Plaintiff had a broken jaw. *Id.* Staff placed Plaintiff in administrative confinement for protection. *Id.* Plaintiff received no treatment for a couple of weeks. *Id.* Plaintiff asked a single dose nurse to write a sick-call request for treatment since Plaintiff did not have a pen or other property. *Id.* The nurse wrote the request. *Id.* Shortly thereafter, Plaintiff was taken to the Dental Clinic where he received additional x-rays. *Id.* Dr. Smith, an oral surgeon, advised Plaintiff his jaw was broken in two places, in the upper near hinge and the front center of his mandible. *Id.* at 6-7. Dr. Smith advised that Plaintiff needed two plates and his mouth wired shut. *Id.* at 7.
>
> After being left in administrative confinement for thirteen days without treatment, Plaintiff, on June 16, 2019, wrote a grievance to Warden Edwards. *Id.* Defendant Dr. Bassa denied the grievance, stating Plaintiff was treated in accordance with policy and procedure. *Id.* Plaintiff appealed to the Office of Secretary, Defendant Inch. *Id.* The Secretary's representative, Michelle Schouest, responded that Dr. Bassa appropriately addressed the matter. *Id.*
>
> Plaintiff alleges Dr. Smith, in retaliation for Plaintiff filing grievances against him, forced Plaintiff to wait thirty-six days before treatment was rendered. *Id.* Plaintiff further alleges, after his

2

operation, on July 9, 2019, unnamed hospital staff treated Plaintiff poorly, harassing him during his twenty-four-hour observation period in reprisal for Plaintiff's complaints against RMC staff, including Dr. Smith. *Id.*

With regard to the medical care Plaintiff received, Plaintiff alleges that while at RMC hospital, Plaintiff discovered that although he had wires on his teeth, his mouth was not wired shut. *Id.* at 8. The extremely tight wires on his bottom teeth stuck straight out and cut the inside of his mouth. *Id.* Pain relievers did not resolve Plaintiff's pain caused by the tightness of the wires. *Id.* On July 10, 2019, Plaintiff told Dr. A. Camon about these problems, and Dr. Camon asked if wax had been provided. *Id.* When Plaintiff told Dr. Camon that Dr. Smith did not provide wax, Dr. Camon arranged for Plaintiff to be brought to the dental clinic. *Id.* On July 10, 2019, more x-rays were taken at the dental clinic. *Id.* Dr. Smith told Plaintiff the break in the upper part of the mandible had already healed before the operation on July 9, 2019; therefore, it did not require a plate. *Id.* Plaintiff inquired as to why his mouth was not wired closed and why the wires were there, but Dr. Smith evaded the questions. *Id.* Plaintiff asked that the wires be removed as they were very tight, were cutting his mouth, and were serving no defined purpose. *Id.* Dr. Smith required the signing of a refusal-of-care-form prior to removal of the wires. *Id.* at 9. Plaintiff signed the form to get the wires removed. *Id.*

During surgery, Dr. Smith created a fleshy mass between Plaintiff's jaw and chin, causing Plaintiff to speak with a lisp. *Id.* Although the tissue shrank over time, the lisp remained. *Id.* Due to the delay in surgery, Plaintiff's teeth are misaligned. *Id.* His misaligned bottom teeth now hit his upper teeth. *Id.* Also, the jaw-bone healed improperly. *Id.*

Plaintiff asserts Dr. Bassa shares in the responsibility for the excessive delay in treatment. *Id.* As a result of the delayed medical care, Plaintiff talks with a lisp and cannot chew his food properly. *Id.* at 11.

Plaintiff alleges Centurion promotes a policy to delay and deny medical care to save money. *Id.* at 10. This cost-cutting culture results in the delay or denial of surgical procedures, without heed to actual need. *Id.* at 11.

(Dkt. 38, pp. 3-7).  Defendant Wheeler moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for Mr. D'Amico's (1) failure to state a claim upon which relief may be granted; (2) qualified immunity; and (3) Eleventh Amendment immunity (Dkt. 33).

Defendants Joseph Edwards and Mark S. Inch move to dismiss pursuant Fed. R. Civ. P. 12(b)(6) for Mr. D'Amico's (1) failure to exhaust administrative remedies; (2) Eleventh Amendment immunity; and (3) failure to prove a constitutional violation against Defendants (Dkt. 37)

## II.    Standard

When considering a motion to dismiss, a court must accept the factual allegations in the complaint as true and construe them in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).  In addition, a pro se plaintiff's allegations are to be liberally construed. *Bingham*, 654 F.3d at 1175.

Still, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   Analysis

### A.   Administrative Remedies

A prisoner bringing a claim regarding prison conditions under 42 U.S.C. § 1983 must first exhaust administrative remedies as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a).  This exhaustion requirement is an affirmative defense, and a plaintiff is not required to plead or demonstrate exhaustion in the complaint. *Jones v. Bock*, 549 U.S. 199, 216-17 (2007); *see also Bingham*, 654 F.3d at 1175 ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint.").

A prisoner exhausts administrative remedies by completing a three-step process of filings with the prison at which he or she is housed. *See* Fla. Admin. Code r. 33-103.005-.007; *Chandler v. Crosby*, 379 F.3d 1278, 1287-88 (11th Cir. 2004).

First, a prisoner files the informal grievance to the staff member in the area responsible for the problem through Form DC6-236. Fla. Admin. Code r. 33-103.005(1); *Chandler*, 379 F.3d at 1288. If denied, the next step is the filing of a formal grievance through Form DC1-303 with the warden's office.

5

*See* Fla. Admin. Code r. 33-103.006(1)(a); *Chandler*, 379 F.3d at 1288. Should that be denied, the final step is the submission of a grievance appeal on Form DC1-303 to the Secretary of the Florida Department of Corrections. *See* Fla. Admin. Code r. 33-103.007; *Chandler*, 379 F.3d at 1288.

Completion of this process includes waiting to receive a response to the grievance appeal or for the time for a response from prison staff to expire. *See* Fla. Admin. Code r. 33-103.011(4). A response to a grievance appeal is due within thirty days from the date the grievance is received by the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.011(3)(c).

This administrative rule also allows for emergency grievances to be filed directly with the Office of the Secretary using the Request for Administrative Remedy or Appeal, Form DC1-303. *See* Fla. Admin. Code r. 33-103.007(3).

In deciding a motion to dismiss based on an exhaustion defense, a court considers the following:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

6

*Whatley v. Warden*, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008)).

Further, if a prisoner's claim, on its face, "fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." *See* 42 U.S.C. § 1997e(c)(2).

In their motion, Defendants Edwards and Inch assert that Mr. D'Amico has failed to exhaust his administrative remedies because none of his grievances raise any allegations against Defendants Edwards and Inch nor that prison administration contributed to the delay in treatment (Dkt. 37, p. 7). Defendants Edwards and Inch acknowledge Mr. D'Amico's exhaustion of administrative remedies as to his claim against Dr. Smith, but deny that Mr. D'Amico has done so for any other Defendants (Dkt. 37, p. 8).

Mr. D'Amico alleges that prior to bringing the instant action, he exhausted his administrative remedies. Mr. D'Amico has attached copies of his grievances, including his denied appeal by the Office of the Secretary regarding the delayed treatment for his broken jaw, to his Complaint (Dkt. 1, pp. 6-7, 13-16).

7

In Mr. D'Amico's request for appeal of the denial of his grievance to the Office of the Secretary, grievance number 19-6-24347, he raises an issue with the response given to his formal grievance number 1906-209-059—that Mr. D'Amico was "being treated in accordance with DC policy and procedure." (Dkt. 1, pp. 13-15).  Mr. D'Amico further states in the appeal form that this "policy violates [his] Eighth Amendment right to be free from cruel and unusual punishment." (Dkt. 1, p. 15).  In support, Mr. D'Amico's appeal states that "a broken jaw (bones) should not go untreated for over 3 weeks" and he makes a request to be treated by a doctor other than Dr. Smith (Dkt. 1, p. 15).Of note, Mr. D'Amico is not required to name a particular defendant in an administrative grievance to properly exhaust available administrative remedies. *See Parzyck v. Prison Health Servs.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

Upon consideration, the Courts finds that dismissal is not warranted and that Defendants Edwards and Inch have not shown a failure to exhaust administrative remedies.

8

**B.     Eighth Amendment Claim[1]**

To state a claim for cruel and unusual punishment regarding medical care that violates the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff satisfies this burden by showing both an objective and subjective element. *See Hoffer v. Sec'y, Fla. Dep't Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (citations omitted).

For the objective element, a plaintiff must demonstrate "an objectively serious medical need—*i.e.*, one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks and citations omitted).

To meet the subjective element, a plaintiff must prove that prison officials "acted with deliberate indifference to [his serious medical] need." *Id.* (citation omitted). Deliberate indifference is established if a plaintiff

---

[1] Mr. D'Amico's statement of claims also raises a First Amendment retaliation issue against Dr. Smith (Dkt. 1, pp. 7, 12). The Court, however, addressed this claim in its Order granting dismissal of Dr. Smith from this action (Dkt. 38, pp. 18-20). In addition, the Court addressed Mr. D'Amico's failure to provide sufficient allegations to state a First Amendment claim against Ramon Bassa, who was also dismissed from this action in the same order (Dkt. 38, p. 29).

9

demonstrates prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *See id.* (citations omitted).[2]

A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (citation omitted).

Here, Mr. D'Amico's Complaint includes allegations in the statement of facts in support of his Eighth Amendment claim as follows: (1) Defendants Inch and Edwards were on notice of a need to treat his broken jaw through his grievances and were in a position to correct his delay in treatment, but remained deliberately indifferent to his seriously needed treatment; (2) Defendant Wheeler, as CEO of the RMC's medical provider, Centurion, and the Secretary of the FDOC, Defendant Inch, promote a policy to delay and deny needed medical care to save money; and that (3) Defendants Wheeler

---

[2] The Eleventh Circuit has repeatedly stated that "a claim of deliberate indifference requires proof of more than *gross* negligence." *Hoffer v. Sec'y, Fla. Dep't Corr.*, 973 F.3d 1263, 1270 n.2 (11th Cir. 2020) (citations omitted). Within the Circuit, however, is a line of cases favoring the "more than *mere* negligence" articulation, which may be a distinction without a difference as "the Supreme Court itself has likened the deliberate-indifference standard to subjective *recklessness* as used in the criminal law." *Id.* (internal quotation marks and citation omitted).

and Inch are responsible for the deliberate indifference of subordinates and the failure to meet minimum prevailing standards of medical care (Dkt. 1, pp. 9-11).

### 1.   *Defendants Inch and Edwards' Alleged Delay in Treatment*

Because Mr. D'Amico was a prisoner at the time of the alleged deprivation, the Eighth Amendment applies. *See Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1094 (11th Cir. 2014).

"Deliberate indifference to a prisoner's serious medical needs violates the eighth amendment because denying or delaying medical treatment is tantamount to unnecessary and wanton infliction of pain." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). A plaintiff must demonstrate that a defendant's responses to medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in treatment, or even medical malpractice actionable under state law. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citations omitted).

A delay in treatment that causes the condition to worsen has also been recognized as a serious medical need. *Mann*, 588 F.3d at 1307. Further, "knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute

deliberate indifference." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). Yet, "medical treatment violates the Constitution only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Dang ex rel. Dang v. Seminole County Florida*, 871 F.3d 1272, 1280 (11th Cir. 2017) (internal quotation marks and citation omitted).

An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009). However, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Rather, "[e]ach individual defendant must be judged separately and on the basis of what the person knows." *Id.*

Even when medical care is provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. *See Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) (citing *Brown*, 894 F.2d at 1537-39). And, "medical care which is so cursory as

12

to amount to no treatment at all may amount to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted).

"Delayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts, but that are obvious serious medical needs, may also give rise to constitutional claims." *Harris*, 21 F.3d at 394.

As for the contracting of the prison's medical services to a non-governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, that private entity . . . may be held liable under § 1983." *See Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 181-82 (11th Cir. 2012) (unpublished) (quoting *Ancata*, 769 F.2d at 703).

Here, Mr. D'Amico alleges that his jaw was broken by another inmate on June 3, 2019, and he immediately went to the urgent care at the RMC, where he received an x-ray that confirmed his jaw was broken (Dkt. 1, p. 6). Mr. D'Amico asserts that he was then placed in administrative confinement, where he remained for "a couple of weeks without any treatment." (Dkt. 1, p. 6). Mr. D'Amico alleges that he submitted a sick call request for his broken jaw and was seen by an oral surgeon, Dr. Smith, in mid-June of 2019, who advised him that his jaw was broken in two places and would require two plates and that his mouth be wired shut (Dkt. 1, pp. 6-7).

13

After not receiving treatment for thirteen days, Mr. D'Amico alleges that he filed a formal grievance to RMC's Warden, Defendant Edwards (Dkt. 1, p. 7). Mr. D'Amico asserts that the RMC Medical Director, Bassa, denied his grievance (Dkt. 1, p. 7). Mr. D'Amico claims that he then appealed to the Office of Secretary, Defendant Inch, because of not receiving treatment for three weeks. This appeal, Mr. D'Amico asserts, alerted the Office of the Secretary that his "jaw had already begun to mend." (Dkt. 1, p. 7). Mr. D'Amico alleges that he received a response thereafter to his grievance from the Secretary's representative, Michelle Schouest (Dkt. 1, p. 7).

First, Mr. D'Amico has sufficiently alleged the objective element of a deliberate indifference claim—that a broken jaw is an objectively serious medical need. Mr. D'Amico asserts that being placed in administrative confinement for thirty-six days without treatment of his broken jaw created a serious medical condition because his jaw improperly healed. As an example of his condition because of the delay in treatment, Mr. D'Amico alleges that his top and bottom teeth are now misaligned when he closes his mouth. In addition, Mr. D'Amico claims that because his jaw had healed before the July 9, 2019 operation, he was "needlessly subjected to pain" from the overtightening of wires placed in his mouth that he did not need and that had no practical purpose (Dkt. 1, pp. 6-12).

14

This Circuit has found delays in care sufficient to state a constitutional claim where there was a deliberate delay of hours to treat a painful broken foot; a two-and-a-half hour delay of treatment for a cut under the eye that was bleeding; and a delay of thirteen hours for a broken and dislocated cervical vertebrae. *See Brown*, 894 F.2d at 1538; *Aldridge v. Montgomery*, 753 F.2d 970, 972-73 (11th Cir. 1985); *Hughes v. Noble*, 295 F.2d 495 (5th Cir. 1961).[3]

In contrast, deliberate indifference to establish a constitutional violation has not been found where an inmate's jaw was broken in a fight and two hours later he was taken to the jail's medical unit and transported to a hospital where he received treatment for pain and surgery on the broken jaw within one day of his injury. *See Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (unpublished).

As for the subjective element, Mr. D'Amico's Complaint alleges that Defendants Inch and Edwards were on notice of the need to treat his jaw through the grievances he filed. (Dkt. 1, p. 9).

---

[3] This Circuit has adopted as binding precedent all decisions of the former Fifth Circuit that existed on or before September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

15

Taking Mr. D'Amico's allegations as true, as the Court must, Mr. D'Amico has sufficiently alleged a serious medical need. And having to wait three weeks for surgery when one's jaw is broken in two separate places does not require a doctor to diagnose and certainly would be obvious to a layperson as to the need for medical attention.

However, Mr. D'Amico's Complaint does not provide sufficient allegations to support a plausible claim of a constitutional violation for a delay in providing necessary medical treatment because he has not alleged that Defendants Inch and Edwards individually and separately acted with deliberate indifference to his broken jaw based on what each knew regarding the treatment of his broken jaw.

That Mr. D'Amico alleges they were on notice of the need for treatment based on the grievances he filed is not sufficient to demonstrate that each had subjective knowledge of Mr. D'Amico's broken jaw. As an example, Mr. D'Amico does not allege that either Defendant Inch or Edwards knew of the grievances filed, which is different than an allegation they were "put on notice of the need to treat" his broken jaw through grievances.

In addition, Mr. D'Amico has not alleged that the grievance appeals to the Office of the Secretary and Warden specifically name either Defendant Edwards nor Inch, nor that either responded to the grievances.

16

In other words, Mr. D'Amico's allegations do not connect how Defendants Inch and Edwards had knowledge of the incident and a risk of serious harm and that each disregarded that risk and acted with more than gross negligence.

The allegations in Mr. D'Amico's Complaint do not state a claim upon which relief may be granted as to Defendants Inch and Edwards for acting with deliberate indifference to a serious medical need. This claim as to Defendants Edwards and Inch is due to be dismissed without prejudice.

### 2.   *Defendants Wheeler and Inch's Alleged Policy to Save Costs*

In his Complaint, Mr. D'Amico raises allegations against Dr. Smith for delay of treatment, and within that allegation, asserts that

> the Department[']s medical provider, Centurion, through its CEO Steven Wheeler, promotes a policy to delay and deny needed medical care, whenever possible, to save money. Former Secretary, Julie L. Jones entered into contract C2869, with Centurion of Florida on January 29, 2016[ ] to provide appropriate health care services to prisoners. Jones was motived to continue to use private health care to save money. She knew or should have known the only way to save money was to reduce and delay medical services to prisoners in violation of the Eighth Amendment. Her actions fostered an extreme cost cutting culture[,] which still exi[s]ts today under new Secretary, Mark S. Inch.
>
> CEO, Wheeler[,] administered over Centurion's health care policy. It fostered cost containment by reducing or delaying needed medical services to prisoners. Under this policy, subordinate employees were directed and given incentives to reduce, or delay, or deny, non-emergency, specialty clinics and surgical needs whenever possible, without regard to actual need.

17

> Both Inch and Wheeler were bound to provide medical care and treatment consistent with minimum standards regardless of costs and both failed to do so. As secretary, Inch was required to supervise, oversee, monitor, or be involved in actions of department and contractor employees. These were duties which could not be delegated by [the] Secretary, Inch. This authority could only be delegated to subordinates for formation of orders, rules, regulations, policies, customs, and practices[,] which enabled Secretary Inch to meet his obligations.
>
> Inch's officiating over the callous deliberate indifferent conduct of his subordinates holds him responsible. Both Secretary Inch and CEO Wheeler were responsible for [the] department[']s failure to meet minimum prevailing standards of medical care in [his] case.

(Dkt. 1, pp. 10-11).

In general, a prison official's consideration of the cost of types or levels of medical treatment an inmate receives is not prohibited by the Eighth Amendment. *Hoffer*, 973 F.3d at 1277. However, "cost can (and often will) be a relevant criterion in determining what the Eighth Amendment requires in a particular circumstance—what 'minimally adequate care' entails in the first instance—it is also clear that cost can never be an absolute defense to what the Constitution otherwise requires." *Id.* (citation omitted).

In other words, "if a particular course of treatment is indeed essential to minimally adequate care, prison authorities can't plead poverty as an excuse for refusing to provide it." *Id.* (internal quotation marks and citation omitted); *see Anderson v. City of Atlanta*, 778 F.2d 678, 688 n.14 (11th Cir.

18

1985) ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care or treatment of inmates.").

In general, a policy is established by "show[ing] a persistent and widespread practice." *Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007) (citation omitted). Accordingly, "random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). In addition, if a plaintiff shows that a defendant promoted a policy, plaintiff must also demonstrate that the government's policy is "the moving force of the constitutional violation." *See Young v. City of Augusta*, 59 F.3d 1160, 1171 (11th Cir. 1995) (internal quotation marks and citations omitted).

Here, Mr. D'Amico has not alleged more than collective knowledge as to Defendants Wheeler and Inch regarding the alleged delay or inadequate treatment. Nor has Mr. D'Amico alleged a single incident nor of any other similar complaints to show more than an isolated incident or that there is a persistent and widespread practice of delay or inadequate treatment of other inmates to establish a custom or policy to save money.

For example, Mr. D'Amico's only claim relating to a policy against anyone other than himself is alleged against Defendant Wheeler for a cost-saving policy of reducing or delaying medical services "to prisoners." (Dkt. 1,

19

p. 11).  While Mr. D'Amico claims that under this policy, subordinates "were directed and given incentives to reduce, or delay, or deny, non-emergency specialty clinics, and surgical needs whenever possible, without regard to actual need," Mr. D'Amico has not alleged a longstanding and widespread practice of a policy to delay medical services or provide inadequate medical care to save costs against Defendant Wheeler (Dkt. 1, p. 11).

Instead, Mr. D'Amico alleges that Centurion, through Defendant Wheeler, "promotes a policy to delay and deny medical care, whenever possible, to save money." (Dkt. 1, p. 10).  This is insufficient to survive a motion to dismiss.

Likewise, Mr. D'Amico has not sufficiently alleged that the policy is the direct causal link of the alleged delay of medical care or inadequate treatment by Defendants Wheeler or Inch. Rather, Mr. D'Amico makes allegations against Dr. Smith for delaying treatment for thirty-six days "because it conformed to a department wide policy." (Dkt. 1, p. 10).

Further, that Mr. D'Amico has brought allegations against former Secretary Julie L. Jones because she entered into a contract with Centurion to provide healthcare services to prisoners is insufficient to demonstrate a department wide policy that still exists under Defendant Inch based on Secretary Jones' being "motived to continue to use private health care to save

20

money" or that "[h]er actions fostered an extreme cost cutting culture." Nor do Mr. D'Amico's claims that Secretary Jones "knew or should have known the only way to save money was to reduce and delay medical services to prisoners" amount to a sufficiently pled claim against Mr. Inch (Dkt. 1, pp. 10-11).

Taking Mr. D'Amico's allegations as true and in a light most favorable to him, Mr. D'Amico has failed to sufficiently allege a claim for an Eighth Amendment violation against Defendants Wheeler and Inch based on delayed medical care or inadequate treatment. Thus, Mr. D'Amico's claims against Defendants are due to be dismissed as to this issue.

**3.** *Defendants Wheeler and Inch's Liability for Subordinates*

Next, the Court addresses Mr. D'Amico's allegations that Defendants Wheeler and Inch have a policy that permits subordinates to disregard minimum prevailing standards of medical care.

Mr. D'Amico's claims against Defendants Wheeler and Inch are more in line with a respondeat superior theory. Mr. D'Amico may not bring a § 1983 action based on liability as a supervisor for the actions or inactions of others. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *see also Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("Because § 1983

21

does not provide for liability under a theory of *respondeat superior*, the district court properly dismissed this claim." (internal citation omitted)).

Instead, supervisory liability under § 1983 occurs when the supervisor either (1) personally participates in the alleged unconstitutional conduct; or (2) when there is a causal connection between the actions of a supervising official and the alleged constitutional violation. *See Van Poyck v. Dugger*, 779 F. Supp. 571, 577 (M.D. Fla. 1991) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

A causal connection is shown when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so," or (2) "a supervisor's custom or policy results in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *See Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (internal quotation marks and citations omitted).

Without more, as discussed above, the allegations in Mr. D'Amico's Complaint do not support a widespread abuse that would put Defendants on notice of the need to correct any deprivation of treatment. Rather, the allegations support that this is an isolated incident. Mr. D'Amico, therefore,

22

has failed to allege facts in his Complaint to support a causal connection between Defendants' actions (or inactions) and any alleged delay in medical treatment.

Accepting Mr. D'Amico's allegations as true and in a light most favorable to him, Mr. D'Amico has failed to state claims for constitutional violations against Defendants for which relief may be granted. Thus, Plaintiff's claims are due to be dismissed without prejudice.

## C.    Eleventh Amendment Immunity

To the extent Mr. D'Amico brings this action against Defendants Edwards, Inch, and Wheeler in their official capacities for compensatory and punitive damages, the Eleventh Amendment bars suits against prison and state officers for monetary damages. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986); *Hayes v. Sec'y, Fla. Dep't of Children & Families*, 563 F. App'x 701, 703 (11th Cir. 2014).

Under the Eleventh Amendment, a state is protected from suit in federal court unless it has waived its Eleventh Amendment immunity or Congress has abrogated that state's immunity.  *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016) (citation omitted).

Eleventh Amendment immunity extends to state officials who are acting in their official capacity. *Id.* (citations omitted).  Florida has not waived its immunity from suit in federal court for § 1983 claims. *Gamble v. Fla. Dep't Health & Rehab. Servs.*, 779 F.2d 1509, 1511-15 (11th Cir. 1986). Nor does a § 1983 claim abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979).

Courts in this Circuit have determined that the Florida Department of Corrections is an arm of the state with sovereign immunity from § 1983 damages suits. *See, e.g., Leonard v. Dep't of Corr.*, 232 F. App'x 892, 894 (11th Cir. 2007) (unpublished).

Thus, Mr. D'Amico's claims against Defendants Edwards, Inch, and Wheeler in their official capacities for compensatory and punitive damages are due to be dismissed with prejudice.

### D.   Qualified Immunity

Giving Mr. D'Amico's Complaint liberal construction because of his pro se status, the Court addresses Mr. D'Amico's claims against Defendant Wheeler in his individual capacity (Dkt. 1, p. 12).  Defendant Wheeler argues that to the extent he is being sued by Mr. D'Amico in his individual capacity, he is entitled to dismissal with prejudice based on qualified immunity (Dkt. 33, p. 7).  In his motion, Defendant Wheeler asserts that Mr. D'Amico's

24

allegations support that Defendant Wheeler was acting within the scope of his discretionary authority as CEO of Centurion (Dkt. 33, p. 8).

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (citation omitted). The intent of this doctrine is to allow government officials "to perform their discretionary duties without the fear of personal liability or harassing litigation" and protect "all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (internal quotation marks and citations omitted).

When considering a motion to dismiss, the Court must conclude that both the "allegations in the complaint, accepted as true, establish a constitutional violation *and* that the constitutional violation was clearly established." *Id.* (internal quotation marks omitted).

To invoke qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks and citations omitted). Discretionary authority has been deemed to "include all actions of a governmental official that (1) were undertaken pursuant to the performance

25

of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks and citation omitted).

Then, the plaintiff must show "(1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation." *Marbury v. Warden*, 936 F.3d 1227, 1232-33 (11th Cir. 2019) (internal quotation marks and citations omitted).

In his Complaint, Mr. D'Amico alleges that former Secretary, Julie L. Jones, contracted with Centurion of Florida in 2016 to provide health care services to prisoners (Dkt. 1, p. 10). Mr. D'Amico claims that Centurion, through its CEO Defendant Wheeler, "promotes a policy to delay and deny needed medical care whenever possible to save money." (Dkt. 1, p. 10). In support, Mr. D'Amico alleges that Dr. Smith "was permitted to delay treatment for thirty-six (36) days because it conformed to a Department wide policy." (Dkt. 1, p. 10).

Mr. D'Amico's allegations support that Defendant Wheeler was acting in the scope of his discretionary authority as Centurion's CEO.

As discussed previously in this Order, Mr. D'Amico has failed to allege a constitutional violation or connect through his allegations that Defendant Wheeler promoted a policy that was the cause of the alleged delay in surgery.

26

Because the Court has determined Mr. D'Amico's allegations are insufficient to demonstrate that Mr. Wheeler violated a constitutional right and that the right was clearly established at the time of the alleged violation, in addition to the Court's determination that the allegations against Defendant Wheeler are due to be dismissed without prejudice, the Court will revisit these findings should it become an issue if an amended complaint is filed with claims against Defendant Wheeler in his individual capacity.  Upon consideration, it is

**ORDERED**:

1.    Defendant Steven H. Wheeler's Motion to Dismiss (Dkt. 33) and Defendants' Edwards and Inch's Motion to Dismiss (Dkt. 37) are **GRANTED** to the extent that Plaintiff Steven F. D'Amico's Complaint is **dismissed without prejudice** as to his claims against Defendants Edwards, Inch, and Wheeler in their individual capacities, and **DENIED** to the extent Defendants request dismissal from this action in their individual capacities;

2.    Defendant Steven H. Wheeler's Motion to Dismiss (Dkt. 33) and Defendants' Edwards and Inch's Motion to Dismiss (Dkt. 37) are **GRANTED** to the extent that Plaintiff Steven F. D'Amico's Complaint is **dismissed with prejudice** as to his claims against Defendants Edwards, Inch, and Wheeler in their official capacities for compensatory and punitive damages; and

3.     Plaintiff Steven F. D'Amico may file an Amended Complaint as to any claims against Defendants Wheeler, Inch, and Edwards in their individual capacities on or before May 26, 2021.

**DONE AND ORDERED** at Jacksonville, Florida, this __29th__ day of April, 2021.

_____

**BRIAN J. DAVIS**
United States District Judge

7
c:
Steven F. D'Amico, #L58304
Counsel of Record

28